375 A.2d 99

**COMMONWEALTH of Pennsylvania**

v.

**Paul ORWIG, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.

Decided June 29, 1977.

Charles J. Tague, Assistant Public Defender, Williamsport, for appellant.

Robert F. Banks, Greenville, with him Allen E. Ertel, District Attorney, Williamsport, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the police violated the Fourth Amendment when they stopped the vehicle in which appellant was riding and in seizing certain drugs from him. We agree and, therefore, reverse.[1]

■ Based on the testimony presented at appellant's January 6, 1976 suppression hearing, the lower court found as follows: During the early morning hours of August 13, 1975, two members of the Williamsport Police Department discovered a broken window in a downtown store. Suspecting a burglary, they and other officers surrounded the store; their subsequent search found the premises empty. At about 5:00 a. m., the officers received a radio call[2] that three suspects were walking on a nearby street. Shortly thereafter, the officers observed a car on Pine Street, two and one-half to three blocks from the scene of the suspected burglary.

The officers decided to stop the vehicle based on those observations and one additional fact: "Officer Oeler recognized the vehicle and the operator because of suspicious conduct which he had observed about one week before. At that time, the officer was engaged in his part-time occupation as a security guard at the Robert Hall Village several miles south of Williamsport. A woman had entered the

1. Appellant also contends that the lower court erred in granting the Commonwealth's petition for an extension pursuant to Rule 1100(c), Pa.R.Crim.P., 19 P.S. Appendix. The Commonwealth filed a timely petition in which it alleged that it anticipated difficulty in bringing appellant to trial within 180 days because the lower court had a motion to suppress under advisement for a considerable period of time. The court granted the extension. However, we need not decide whether the extension was properly granted because the record indicates that counsel for appellant was unavailable when trial was scheduled on August 11, 1975 and for several days thereafter. Trial commenced only four days beyond the 180th day. Thus, because the period was extended automatically by operation of Rule 1100(d), we need not consider the issue under Rule 1100(c). *Commonwealth v. Reese,* 237 Pa.Super. 326, 352 A.2d 143 (1975).

2. The radio call failed to satisfy requirements of probable cause, for, as noted by the lower court, "[t]he source of this dispatch was not known to any of the witnesses at the hearing and will be considered by the court to have been an unsubstantiated anonymous tip."

Robert Hall store returning a suit for which she requested and obtained a $90.00 refund. An employee at the store advised security guard Oeler that the same girl had come in a short time before, returning a suit for a $90.00 refund but giving a different name on the first occasion than she had on the second. Oeler followed her out of the Robert Hall building. As she approached a Ford Maverick automobile in which there were three occupants, the occupants of the vehicle saw Oeler following the woman and the vehicle departed. Oeler entered his vehicle and followed the Maverick as it left the Robert Hall Village area and proceeded a short distance away where it parked. The woman was observed by Oeler to have walked through an adjoining field from the shopping center to the car: when she entered the car, it left. The vehicle had a Florida license plate. On the morning of August 13th, Oeler identified the Maverick vehicle on Pine Street to have been the same one and to be operated by the same individual."

The lower court concluded that the foregoing justified the subsequent stop of the vehicle. The Commonwealth concedes that the police did not have the requisite information to make a legal stop. See *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975); *Commonwealth v. Boyer*, 455 Pa. 283, 314 A.2d 317 (1975); *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Nastari*, 232 Pa.Super. 405, 335 A.2d 468 (1975). Based on the scant evidence possessed by the officers, we agree. The Commonwealth, however, attempts to justify the stop on another theory: "Here, Laudenslager [appellant's co-defendant] was operating a motor vehicle with a 'bad muffler' when he was forcibly stopped by the police. Such is a summary violation of The Vehicle Code, Act of 1959, April 29, P.L. 58, § 28, as amended, 75 P.S. § 828.

"Thus, under *Swanger*, Officer Oeler and his fellow officer had a right forcibly to stop Laudenslager for at least the limited purpose of issuing a citation to him. . . .

"But Officer Oeler candidly admitted that although 'It [Laudenslager's vehicle] had a bad muffler . . . I

didn't stop it for a bad muffler.' . . . Instead, he stopped the vehicle because it had been engaged in some dubious activity at 'Robert Hall and [he] recognized the vehicle from being up there. . . .'

"Once again we are constrained to concede that the reason which Officer Oeler himself assigned for stopping Laudenslager's vehicle simply will not hold constitutional water.

. . .

"But that concession indubitably does not scuttle the case for the Commonwealth. For the issue now is whether the subjective purposes of Officer Oeler for stopping the vehicle is controlling, or, conversely, whether an objective test is applicable."

We have never held that, after the fact, the police are free to cite a hypothetical rationale for an otherwise illegal stop.[3] The officer testified unequivocally that he did not stop the vehicle to give the driver a citation for a violation of The Vehicle Code. That should put to rest the Commonwealth's argument that we should now validate the police officer's action, Cf. *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 352 A.2d 548 (1975) (dissenting opinion by HOFFMAN, J.).

■ We believe that the search was illegal for an additional reason. Once the police made their initial stop, appellant was ordered from the car. One of the officers asked appellant for his identification. Appellant said that he was Gary Laudenslager. "[The officer] had seen Laudenslager before and knew that the man did not appear to be Laudenslager and therefore his suspicions increased. He asked [appellant] to turn around and when he did, he noticed a bulge in the right rear pocket. Anticipating that this was a wallet which would have the correct identification, [the officer] asked [appellant] what it was in the rear pocket and

3. The Commonwealth relies on *Commonwealth v. Mayer,* 240 Pa.Super. 181, 362 A.2d 407 (filed April 22, 1976); and *Commonwealth v. Donnelly,* 233 Pa.Super. 396, 336 A.2d 632 (1975), for its view that in this instance, the officer's belief is irrelevant. Those cases are simply inapposite. Further, the Commonwealth misrepresents the problem as one of the nature of the officer's belief, rather than his intent.

[appellant] said 'I don't know'. Increasingly suspicious that criminal activity was afoot, the officer removed the item from the pocket and it developed that it was a dark box containing what appeared to be prescription drugs." That is, the lower court specifically credited the officer's testimony that the officer believed that the bulge was a wallet, not a weapon. Thus, the officer's action was a search, requiring probable cause, not a "patdown", requiring only a reasonable suspicion of criminal activity and fear by the officer for his own safety. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). All of the parties seem to agree that probable cause was still wanting at this stage; the court below and the Commonwealth would justify the officer's action by reference to a lower, but inapposite standard. Therefore, the search was illegal. See *Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974).

Therefore, we vacate the judgment of sentence and order that the evidence seized pursuant to the challenged search be suppressed. A new trial is granted.

WATKINS, President Judge, and VAN der VOORT, J., dissent.