J-S68040-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID BRANDON JUDY, | : | |
| | : | |
| Appellee | : | No. 489 WDA 2016 |

Appeal from the Order Entered March 30, 2016
in the Court of Common Pleas of Westmoreland County,
Criminal Division, at No(s): CP-65-CR-0003049-2015

BEFORE:    SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 18, 2016**

The Commonwealth of Pennsylvania appeals from the March 30, 2016 order which granted the motion to dismiss filed by David Brandon Judy (Judy).  Upon review, we affirm.

The suppression court summarized the underlying facts of this case as follows.

> During the hearing on [Judy's motion to dismiss], [Pennsylvania State Police Trooper Gregory Hays (Trooper Hays)] testified relative to his interaction with [Judy].  Trooper Hays testified that at approximately 1:06 a.m. [on March 20, 2015, Trooper Hays] observed [Judy's] vehicle traveling east on Route 30.  He followed the vehicle for a distance and began to clock the vehicle using the calibrated speedometer in his police cruiser.  Trooper Hays testified that from the time he started to clock [Judy's] vehicle until the time the stop occurred, he observed [Judy] for a quarter of a mile.  Trooper Hays indicated that [Judy] was traveling 60 miles an hour in a 40 mile an hour zone.

---

*Retired Senior Judge assigned to the Superior Court.

> Trooper Hays testified that he also observed [Judy's] vehicle travel across the fog line on three occasions. Based on Trooper Hays observations, he initiated a traffic stop. Trooper Hays testified that his police cruiser is equipped with a Dash Cam video, and it was operating during the incident.
>
> On cross-examination, Trooper Hays testified that when he first came across [Judy's] vehicle, [Judy] was not swerving, weaving, or speeding. At this time, Trooper Hays indicated that he had no reason to be suspicious that [Judy] was driving under the influence of alcohol. Trooper Hays testified that when he initiated the traffic stop, he did not have enough evidence against [Judy] to charge him with speeding. Trooper Hays testified that [Judy] "touched" the fog line with his tire. However, Trooper Hays testified that during his observation, [Judy] never left its proper lane of traffic, did not cross over the fog line, or touch the berm. Trooper Hays indicated that there were no other cars on the road at this time.

Suppression Court Opinion and Order, 3/30/2016, at 3.[1] The stop of Judy's vehicle resulted in Judy's being charged with several motor vehicle code violations, *inter alia*, DUI.[2] On December 3, 2015, Judy filed a motion to dismiss. On March 30, 2016, following the hearing and after consideration of the parties' briefs, the suppression court granted Judy's motion, holding as follows.

---

[1] The suppression court filed its Rule 1925(a) opinion in which it relied solely on its analysis of the issues set forth in the court's March 30, 2016 opinion filed with its order granting Judy's motion to dismiss.

[2] Because the only issue raised at the hearing concerned Trooper Hays' initial stop of Judy's vehicle and whether he had the requisite probable cause to do so, testimony was not elicited from Trooper Hays regarding the observations he made when he encountered Judy and any field sobriety tests he may have conducted.

> [The suppression court] finds that Trooper Hays lacked probable cause to stop Mr. Judy for speeding. Trooper Hays did not clock [Judy's] vehicle for the requisite distance under the Motor Vehicle Code. Additionally, Trooper Hays testified that when he initiated the traffic stop, he did not have enough evidence against [Judy] to charge him with speeding. There was no evidence presented to suggest that [Judy] was traveling faster than reasonable and prudent under the conditions which existed March 20, 2015. Absent other factors, Trooper Hays' testimony that [Judy] was traveling 60 miles an hour in a 40 mile an hour zone over a distance of a quarter of a mile, does not alone, amount to probable cause to initiate a traffic stop.

Suppression Court Opinion and Order, 3/30/2016, at 4. This timely-filed appeal followed.[3]

The Commonwealth presents one issue for this Court's review: "[t]he suppression court err[ed] in finding the trooper lacked probable cause to stop [Judy's] vehicle for speeding because the trooper did not clock the vehicle for the request distance under the motor vehicle code[4] in light of the Superior Court's holding in [**Commonwealth v. McElroy**, 630 A.2d 35 (Pa. Super. 1993) (*en banc*)]." Commonwealth's Brief at 1 (unnecessary capitalization omitted).

We consider the Commonwealth's issue mindful of the following.

---

[3] Both the suppression court and the Commonwealth have complied with Pa.R.A.P. 1925.

[4] **See** 75 Pa.C.S. § 3368 ("The rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile.").

When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Gorbea-Lespier*, 66 A.3d 382, 385-86 (Pa. Super. 2013) (quotation marks and citations omitted) (quoting *Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013)).

The following principles guide our review of this matter.

[W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

*Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015)

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity.

- 4 -

In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (internal quotation marks and citations omitted).

The Commonwealth avers that Trooper Hays possessed the requisite probable cause to initiate the traffic stop. In making this argument, the Commonwealth relies solely on our holding in ***McElroy***. In ***McElroy***, Officer Arnold Duck testified he observed McElroy's vehicle for approximately five seconds travelling at a high rate of speed. 630 A.2d at 37. Specifically, the Officer estimated the truck McElroy was driving was travelling at least 80 miles per hour in a 35-mile-per-hour-zone. ***Id.*** Officer Duck immediately turned his vehicle around and began pursuing McElroy, eventually initiating a stop of McElroy's vehicle. ***Id.*** Officer Duck testified that at the time, he felt he had probable cause to stop McElroy for travelling in excess of the speed limit. ***Id.*** During the traffic stop, "Officer Duck and his partner detected the odor of alcohol on [McElroy's] breath and asked [McElroy] to submit to field sobriety tests." ***Id.*** After failing said tests, McElroy was arrested and transported to the hospital where a blood test revealed a blood alcohol level of .19%. McElroy was charged with, *inter alia*, DUI.

McElroy filed a motion to suppress, arguing that "the initial stop of his vehicle was illegal because the police officer lacked 'probable cause to believe' or 'articulable and reasonable ground to suspect a violation of the

[vehicle code]'". *Id.* at 36. The trial court denied McElroy's motion. After being found guilty and sentenced accordingly, McElroy filed an appeal challenging the denial of his suppression motion. This Court granted *en banc* consideration of this case to "clarify the standard to be applied when determining whether a police officer may legally stop a motor vehicle[.]" *Id.*

Upon review, the **McElroy** Court concluded that the suppression motion was properly denied, even though Officer Duck's assessment of McElroy's speed was based only upon his personal observation. In doing so, the Court found that while "it is true that a police officer's opinion testimony alone is not sufficient to sustain a **conviction** for speeding under 75 Pa.C.S.§ 3362[,]" the question presented is not whether Officer Duck's testimony could sustain a conviction for speeding, but rather whether his testimony amounted to 'reasonable and articulable grounds to suspect a violation of the Vehicle Code.'" *McElroy*, 630 A.2d at 40 (emphasis in original). The Court held that the Officer's opinion that the truck "was travelling 80 miles per hour in a 30 mile per hour zone amounted to 'articulable and reasonable grounds' to suspect [McElroy] was speeding, and Officer Duck was entitled to stop []and request [McElroy's] driver's license, vehicle registration and proof of financial responsibility." *Id.*

In concluding the Officer had sufficient probable cause to initiate the stop, the **McElroy** Court expressly overruled this Court's prior decision in **Commonwealth v. Whitmyer** 609 A.2d 809 (Pa. Super. 1992).

> In **Whitmyer**[,] a police officer stopped Whitmyer's vehicle because the officer felt the operator was driving "erratically" and was travelling at an unsafe speed in violation of 75 Pa.C.S.[] § 3361. The officer testified that he followed Whitmyer for two-tenths of a mile [instead of the three-tenths of a mile required by the Vehicle Code] at 70 miles per hour in a 55 miles per hour zone, before Whitmyer exited the highway. He described Whitmyer's driving as "erratic" and noted that the traffic on the highway was medium to heavy at the time. In spite of the officer's testimony regarding his reasons for stopping [Whitmyer], the trial court suppressed [] all evidence gained as a result of the stop. The trial court reasoned that the police officer did not have "probable cause to believe" that Whitmyer was in violation of [75 Pa.C.S. § 3361], and, thus, the stop was illegal. A panel of this [C]ourt agreed with the trial court that the officer's observations did not amount to "articulable and reasonable grounds to suspect" that Whitmyer was driving at an unsafe speed. **Whitmyer,** 609 A.2d at 814-815.

**McElroy**, 630 A.2d at 41 (footnote omitted).

In relying on this Court's holding in **McElroy**, the Commonwealth neglects to mention that our Supreme Court affirmed **Whitmyer** after this Court overruled it with **McElroy**. **See Commonwealth v. Whitmyer**, 668 A.2d 1113 (Pa. 1995) (superseded by statute).[5] In affirming this Court's

---

[5] Since our Supreme Court's holding in **Whitmyer**, the statute setting forth the requirements a police officer must meet in order to initiate a stop of a vehicle has changed. Specifically, the former version of 75 Pa.C.S. § 6308(b) required a police officer have "articulable and reasonable grounds" to effectuate a vehicle stop. The present version requires a police officer have "reasonable suspicion" that a violation of the motor vehicle code

decision in **Whitmyer**, our Supreme Court held that "the trooper **could not** have relied upon his estimate of [Whitmyer's] speed as that estimate was based on a distance of only two-tenths of a mile instead of the three-tenths required by the statute." **Id.** at 1117 (emphasis added). In concluding as such, our Supreme Court made it clear that

> this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code. If the trooper was unable to clock [Whitmyer] for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation. Thus, we conclude that the fruits of the unlawful stop were correctly suppressed.

**Id.** at 1118.

Here, Trooper Hays testified that he stopped Judy for speeding, but failed to clock Judy for the three-tenths of a mile required by statute. Thus, based on our Supreme Court's holding in **Whitmyer**, we are constrained to affirm the suppression court's finding that Trooper Hays lacked probable cause to stop Judy's vehicle.

Order affirmed.

---

is occurring or had occurred in order to initiate a stop. Despite the change in language, this Court has continued to hold that a police officer must have probable cause to pull over a vehicle for speeding. **Salter**, 121 A.3d at 993 ("If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016